UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRICE PARKER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CHERNE CONTRACTING CORPORATION,<br><br>    Defendant. | Case No. 18-cv-01912-HSG<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 93 |

Pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by Plaintiffs. Dkt. No. 93 ("Motion"). Defendant has also filed a statement of non-opposition. Dkt. No. 94. The parties have reached a settlement regarding Plaintiffs' claims and now seek the required court approval. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion.

## I. BACKGROUND

### A. Factual Background

Plaintiff Parker worked for Defendant as an hourly-paid driver/driver-foreman at the Tesoro refinery in Martinez, California. *See* Dkt. No. 81 ("Class Cert. Order") at 2. Plaintiff Gurule worked for Defendant as an hourly-paid pipefitter at the Tesoro refinery in Martinez, California and at the Chevron refinery in Richmond, California. *Id.* In this dispute, Plaintiffs contend that Defendant operated under a policy known as "in on the employee's time and out on the employer's time," under which employees are not paid for the time spent badging in, traveling from a refinery gate to the work site within the refinery, and obtaining and donning required safety gear, but are paid for the time spent removing the required safety gear, traveling back to the gate and badging out at the end of the work day. *Id.*

1    Based on that conduct, Plaintiffs allege that Defendant failed to pay the statutory minimum wage for all compensable time worked; failed to provide accurate, itemized wage statements; failed to pay all statutory minimum wages due upon termination; and failed to pay wages in the time frame set by law.  Mot. at 4.  Plaintiffs allege that Defendant violated California Business & Professions Code §§ 17200, *et seq.*, and California Labor Code §§ 201-203, 204b, 226(a), 550-552, 1194, 1194.2, 1197, 1197.1, 1199(a), 1199(b) and 1199(c).  *Id.*

Plaintiffs sought to certify a class of 2,361 hourly employees who worked in 49 different job positions, and proposed two subclasses: a "Waiting Time Subclass" and a "Wage Statement Subclass."  Class Cert. Order at 2.

### B.  Procedural Background

Plaintiff Parker filed the initial class action complaint on February 13, 2018; the First Amended Complaint on February 23, 2018; the Second Amended Complaint on February 11, 2019; and the operative Third Amended Complaint on November 23, 2020, adding Plaintiff Gurule as a named plaintiff.  *See* Dkt Nos. 1-1, 32, 81, 82.

Defendant moved to dismiss the original complaint on collective bargaining preemption grounds.  Dkt. No. 8.  On January 29, 2019, the Court granted in part and denied in part Defendant's motion, dismissing the unpaid overtime and missed-meal-period claims based on its finding that collective bargaining agreements precluded those claims.  Dkt. No. 30.

Plaintiffs moved for class certification in late 2019.  Dkt. No. 55.  The Court deferred ruling on the class certification motion to allow Defendant to file its motion for summary judgment.  Dkt. Nos. 64, 70.  The Court held a hearing on both motions on August 6, 2020.  Dkt. No. 80.  On November 20, 2020, the Court issued its Class Certification Order Denying in Part and Granting in Part Motion for Class Certification and granting the motion to amend the complaint.  Class Cert. Order.  The Court denied certification of the unpaid wage-related claim but granted certification of the Wage Statement Sub-Class, defined as: "all of Defendant's former hourly employees who worked for Defendant in California between December 18, 2016 and June 6, 2019 and received paper wage statements that did not have Defendant's full name and address printed on them."  *Id.*

2

### C. Settlement Agreement

Following extensive discovery and an all-day mediation session with an experienced and skilled mediator, the parties agreed to settle the entire action on the terms set out in the Settlement Agreement. Mot. at 5-6. The key terms of the Settlement Agreement are as follows:

#### i. The Settlement Class and Aggrieved Employee Definitions

"Class Members" are defined as "[a]ll current and former hourly employees who worked for Defendant in California and received one or more paper paychecks during the Class Period." Dkt. No. 93-1, Ex. A ("Settlement Agreement" or "SA") § I.H. Settlement Class Members are "all Class Members who do not submit a valid Request for Exclusion," SA § I.RR. The Class Period is December 18, 2016 through June 6, 2019; the class definition is coextensive with the Class certified in the November 22, 2020 Class Certification Order. SA §§ I.I, II.A; Mot. at 6. There are 1,840 Class Members who received 28,343 paper paychecks during the Class Period. Mot. at 6.

For the PAGA claims, the Settlement defines "Aggrieved Employees" to mean "all current and former hourly employees who worked for Defendant in California at any time during the PAGA Period." SA § I.B. The PAGA Period is from December 18, 2016 through February 22, 2021. SA § I.BB. There are 2,211 Aggrieved Employees; 1,840 are also Class Members, and 371 are not. Mot. at 7.

#### ii. Settlement Benefits

The Settlement provides that Defendant will fund a Maximum Settlement Amount ("MSA") in the amount of $2,500,000 to resolve the claims covered by the Settlement. SA §§ I.W, III.A. After subtracting out the amounts allocated to the PAGA Payment ($500,000), Class Counsel's fees and costs (fees not to exceed $750,000 plus actual out-of-pocket costs, which are currently estimated not to exceed $40,000), the General Release Payments (not to exceed $40,000), Class Representative Incentive Awards (not to exceed $7,500), and the settlement administration costs (not to exceed $16,000), the remaining funds, referred to as the Net Settlement Amount, will distributed in full to the Settlement Class Members. SA §§ I.X and III.L.2, *see*, §§ I.F, I.J., I.R, I.AA, III.C, III.L.3-L.6. The Net Settlement Amount is estimated to

be $1,146,500.57. Mot. at 7. Defendant does not have any revisionary interest in the MSA. SA § III.L.

### iii. Settlement Payments

The Settlement Agreement provides that Settlement Class Members will receive Individual Settlement Payments without the need to submit a claim form. SA § III.L.2.a. The Settlement Administrator will divide the respective Qualified Paper Paychecks for each Settlement Class Member by the total Qualified Paper Paychecks for all Settlement Class Members, resulting in the Payment Ratio for each Settlement Class Member. SA § III.L.2.a.1. Each Settlement Class Member's Payment Ratio will then be multiplied by the Net Settlement Amount to calculate each Settlement Class Member's share of the Net Settlement Amount. *Id.*

The parties have also agreed to allocate $500,000 of the MSA to settle the PAGA claims. SA §§ I.AA, III.L.5. Aggrieved Employees are entitled to 25% of that amount ($125,000), which will be distributed according to a formula set forth in the Settlement Agreement. Mot. at 8. On average, each Aggrieved Employee is expected to receive a payment of $56.54. *Id.* at 9.

### iv. Cy Pres Distribution

The parties have agreed that any unclaimed funds will be divided in half and distributed equally to the parties' two *cy pres* recipients. Mot. at 9. The two *cy pres* recipients are Build California, a 501(c)(3) organization that is working to develop a future workforce for the construction industry from often under-represented communities (https://buildcalifornia.com/about/) and The Beavers Charitable Trust, which provides endowments and scholarships for universities feeding the construction industry (https://www.thebeavers.org/charitable-trust/). *Id.* All funds sent to The Beaver Charitable Trust must be directed to a university located in California. *Id.* None of the Parties' counsel has any relationship to the selected recipients. *Id.*

The Parties also have agreed that if any Individual PAGA Payment checks issued to Aggrieved Employees remain uncashed more than 90 days after their issuance, the remaining funds will be paid to the California Labor & Workforce Development Agency ("LWDA"). *Id.* at 9-10.

### v. Settlement Class Member Release, PAGA Release, and General Release

The Settlement Agreement provides for a Limited Release applicable to the Settlement Class Members. SA §§ III.B, I.MM, I.NN. Through the Limited Release, Plaintiffs and Settlement Class Members will release only the claims in the operative Third Amended Complaint under Labor Code § 226 based on the failure to provide compliant wage statements, together with interest, fees, and costs related to that failure. SA §§ III.B, I.MM.

The Settlement Agreement provides a separate PAGA Release through which Plaintiff Parker, individually and as representative acting as a proxy or agent of the LWDA, a State of California Executive Branch Agency, releases the Released Parties of and from any and all claims for civil penalties, attorneys' fees, and litigations costs under PAGA. SA § III.D. No individual Class Members or Aggrieved Employees are providing a PAGA Release.

In addition to the certified Labor Code § 226 claim, Plaintiffs Parker and Gurule have individual wage and hour claims that remain part of the action. SA § III.C. In exchange for a payment of $20,000 to each named Plaintiff, the named Plaintiffs will provide a General Release, as set forth in § I.C of the Settlement Agreement, of their claims against the Released Parties. *Id.* The General Release Payments shall be in addition to each Plaintiff's Class Representative Incentive Award, Individual Settlement Payment, and Individual PAGA Payment. *Id.* Plaintiffs will apply for the Court's approval of the General Release Payments with the motion for attorneys' fees and costs. Mot. at 11.

### vi. Class Notice

The proposed Notice of Class Action Settlement explains the terms of the Settlement and how Class Members can opt out or object. *See* Dkt. No. 93-1 SA Ex. 1 ("Notice"). The Notice will be individualized to include each Class Member's number of Qualified Paper Paychecks and calculation of their estimated Individual Settlement Payment. *Id.* The Notice also sets forth the release that the Class Members will provide in exchange for the Individual Settlement Payment. *Id.* The Notice also informs Class Members that Class Counsel will file a motion seeking an award of attorneys' fees and reimbursement of actual litigation costs and expenses, and requesting approval of the Class Representative Incentive Awards and General Release Payments; and states

the deadline on which that motion must be filed and the deadline for a Class Member to object. *Id.*

The Notice will also inform Settlement Class Members of the PAGA Settlement. *Id.* Non-Class Member Aggrieved Employees will receive an explanatory letter with their Individual PAGA Payment if the PAGA Settlement is approved. SA § III.K.9.

### vii. Opt Out and Objection Procedures

Class Members will have 45 calendar days from the date the Notices are mailed to opt out. SA § III.K.9. The Notice will provide a specific date informing the Class Members of the exact deadline and instructions regarding how to opt out of the Settlement. Notice. Class Members also have the opportunity to object to the Settlement and will have 45 days from the date the Notices are mailed to submit their written objection by mail. SA § III.K.8.

### viii. Attorneys' Fees and Costs and Class Representative Incentive Awards

The Settlement provides that Class Counsel may seek an award of attorneys' fees of no more than $750,000, which is 30% of the MSA, and actual out-of-pocket expenses and costs, which are estimated not to exceed $40,000. SA III.L.4. Class Counsel's motion for award of attorneys' fees and costs, the General Release Payments and Class Representative Incentive Awards will be the subject of a separate motion that will be filed no later than 14 days before the opt-out and objections Response Deadline. Mot. at 13

### ix. Settlement Administration

The Parties have selected RG2 Claims Administration LLC as the proposed third-party Settlement Administrator. Mot. at 14. The Settlement Agreement allocates $16,000 of the MSA for the administration costs. SA § III.L.6. Because the Class Members are Defendant's former and current employees whose identities and contact information are readily available, the parties agreed that mail notice provides the best practicable notice under the circumstances. Mot. at 14. Defendant will provide the Settlement Administrator with each Class Member's contact information and the number of paper paychecks issued to each Class Member during the Class Period. SA §§ I.G, III.K.1. The Settlement Administrator will perform address updates and verifications as necessary and send the settlement Notice and Claim Form via first-class U.S. mail.

SA §§ III.K.1, III.K.3. If a Notice Packet is returned, the Settlement Administrator will conduct address follow-up and will re-mail the Notice Packet to any updated address. SA § III.K.4.

## II. DISCUSSION

### A. Class Certification

Because no facts have changed that would affect the Court's certification of the Wage Statement Class since the Court certified that class on November 20, 2020, this order incorporates by reference its prior analysis as set forth in the class certification order. Class Cert. Order at 11-19.

### B. Preliminary Settlement Approval

#### i. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

#### ii. Analysis

##### a. Settlement Process

The first factor the Court considers is the means by which the parties settled the action.

"An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

This settlement was reached after considerable arms-length bargaining between the parties, including a full-day mediation session with an experienced mediator in wage and hour cases. Mot. at 17-18. This process weighs in favor of granting preliminary settlement approval. *See also Satchell v. Fed. Exp. Corp.*, No. C 03–2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). The Court also notes the absence of a "clear sailing" arrangement, under which the Defendant agrees not to challenge Class Counsel's request for attorneys' fees. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947-48 (9th Cir. 2011)

### b. Preferential Treatment

The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *Id.* For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grants preferential treatment to class representatives." *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

The Settlement Agreement provides that each Settlement Class Member will receive a payment based on the total number of paper paychecks they received during the Class Period. Thus, each Settlement Class Member's payment will be based on the potential value of their individual Labor Code § 226(a) claims. The Court preliminarily finds that this proposed distribution does not improperly grant preferential treatment to Class Representatives.

Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Such awards are "fairly typical" but "discretionary." *Id.* at 958. Plaintiffs must provide sufficient evidence to allow the Court to "evaluate [the named plaintiff's] award[] individually, using relevant factors including

the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (internal quotation omitted). Courts in this district have routinely stated that a $5,000 award is "presumptively reasonable." *See Noroma v. Home Point Fin. Corp.*, No. 17-CV-07205-HSG, 2019 WL 1589980, at *8 (N.D. Cal. Apr. 12, 2019).

The Settlement Agreement authorizes the Class Representatives to seek service awards of up to $5,000 for Plaintiff Parker and $2,500 for Plaintiff Gurule. SA § III.L.3. This is a non-reversionary settlement in which Defendant is required to pay the entirety of the Maximum Settlement Amount, so if the Court approves a reduced award, the remainder will be distributed to members of the Class. *See* SA § III.L.3.b. The Court finds that at the preliminary approval stage, the intent to seek incentive awards does not suggest preferential treatment of any segment of the class, particularly because any portion of the award that the Court declines to grant will be distributed to Class members.

The Settlement Agreement also provides for the named Plaintiffs to enter into a General Release in exchange for $20,000 each. SA §§ III.L.3, II.C. The General Release does not apply to the Settlement Class Members. *Id.* Plaintiffs intend to apply separately for the Court's approval of the General Release Payments with the motion for attorneys' fees and costs. Mot. at 11. The Court preliminarily finds that because the General Release does not apply to the Settlement Class Members, the General Release Payments to the named Plaintiffs do not improperly grant preferential treatment. However, the Court will revisit this issue when Plaintiffs file their motion.

### c. Settlement Within Range of Possible Approval

The third factor that the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware*, 484 F. Supp. 2d at 1080. This requires the Court to evaluate the strength of Plaintiff's case.

Class Counsel has calculated the maximum value of the Labor Code § 226(a) class claim as $2,742,300. Mot. at 19. The $2,500,000 Maximum Settlement Amount represents 91% of the maximum damage calculation. *Id.* Class Counsel also estimates that the maximum average potential value of each certified Class Member's Labor Code § 226(a) claim is $1,490.38. Mot. at 8. Through the Settlement, each Settlement Class Member is expected to receive an Individual Settlement Payment of, on average, $623.10. *Id.* The Settlement thus provides Settlement Class Members with 42.17% of their potential recovery for their Labor Code § 226(a) claims. *Id.*

Plaintiffs also persuasively explain that they would face significant costs, risks, and delay if the case proceeded to trial. Mot. at 19-20. In particular, Plaintiffs may have difficulty countering Defendant's arguments that no Class Member suffered any damages related to the issuance of wage statements and that Plaintiffs will be unable to prove "knowing and intentional failure" under Labor Code § 226(e). *Id.*

In light of the significant settlement amount and the risks and challenges faced by Plaintiffs if the case proceeds, the Court finds that the settlement is within the range of possible approval.

### d. Obvious Deficiencies

The fourth and final factor that the Court considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.

## III. PROPOSED CLASS NOTICE PLAN

The Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B). The "best notice . . . practicable under the circumstances[] includ[es] individual notice to all [class] members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

(i)     the nature of the action;
(ii)    the definition of the class certified;
(iii)   the class claims, issues, or defenses;
(iv)   that a class member may enter an appearance through an attorney if the member so desires;
(v)    that the court will exclude from the class any member who requests exclusion;
(vi)   the time and manner for requesting exclusion; and
(vii)  the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The Court finds that the parties' proposed notice plan, described above, is the best practicable form of notice under the circumstances and satisfies Rule 23 requirements.

## IV. CONCLUSION

The Court **GRANTS** Plaintiffs' motion for preliminary approval of class action. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail Notice to Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment, at least 30 days after the filing of the motions for attorneys' fees and incentive payments | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated: 7/29/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge

11