UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRICE PARKER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CHERNE CONTRACTING CORPORATION,<br><br>    Defendant. | Case No. 18-cv-01912-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND INCENTIVE AWARDS**<br><br>Re: Dkt. Nos. 103, 106 |

Pending before the Court are Plaintiffs' motions for final approval of class action settlement and for attorneys' fees, costs, and incentive awards. Dkt. Nos. 103, 106. The Court held a final fairness hearing on December 2, 2021. For the reasons detailed below, the Court **GRANTS** final approval. The Court also **GRANTS** Plaintiffs' motion for attorneys' fees, costs, and incentive awards.

## I.  BACKGROUND

### A.  Factual Background

Plaintiff Parker worked for Defendant as an hourly-paid driver/driver-foreman at the Tesoro refinery in Martinez, California. *See* Dkt. No. 81 ("Class Cert. Order") at 2. Plaintiff Gurule worked for Defendant as an hourly-paid pipefitter at the Tesoro refinery in Martinez, California and at the Chevron refinery in Richmond, California. *Id.* Plaintiffs contend that Defendant operated under a policy known as "in on the employee's time and out on the employer's time," under which employees are not paid for the time spent badging in, traveling from a refinery gate to the work site within the refinery, and obtaining and donning required safety gear, but are paid for the time spent removing the required safety gear, traveling back to the gate, and badging out at the end of the workday. *Id.*

Based on that conduct, Plaintiffs allege that Defendant failed to pay the statutory minimum wage for all compensable time worked; failed to provide accurate, itemized wage statements; failed to pay all statutory minimum wages due upon termination; and failed to pay wages in the time frame set by law. *Id.* Plaintiffs allege that Defendant violated California Business & Professions Code §§ 17200, et seq., and California Labor Code §§ 201-203, 204b, 226(a), 550-552, 1194, 1194.2, 1197, 1197.1, 1199(a), 1199(b) and 1199(c). *Id.* Plaintiffs sought to certify a class of 2,361 hourly employees who worked in 49 different job positions and proposed two subclasses: a "Waiting Time Subclass" and a "Wage Statement Subclass." *Id.*

### B. Procedural Background

Plaintiff Parker filed the initial class action complaint on February 13, 2018; the First Amended Complaint on February 23, 2018; the Second Amended Complaint on February 11, 2019; and the operative Third Amended Complaint on November 23, 2020, adding Plaintiff Gurule as a named plaintiff. *See* Dkt Nos. 1-1, 32, 81, 82. Defendant moved to dismiss the original complaint on collective bargaining preemption grounds. Dkt. No. 8. On January 29, 2019, the Court granted in part and denied in part Defendant's motion, dismissing the unpaid overtime and missed-meal-period claims based on its finding that collective bargaining agreements precluded those claims. Dkt. No. 30.

Plaintiffs moved for class certification in late 2019. Dkt. No. 55. The Court deferred ruling on the class certification motion to allow Defendant to file its motion for summary judgment. Dkt. Nos. 64, 70. The Court held a hearing on both motions on August 6, 2020. Dkt. No. 80. On November 20, 2020, the Court issued its Class Certification Order denying in part and granting in part the Motion for Class Certification and granting the motion to amend the complaint. Class Cert. Order. The Court denied certification of the unpaid wage-related claim but granted certification of the Wage Statement Sub-Class, defined as: "all of Defendant's former hourly employees who worked for Defendant in California between December 18, 2016 and June 6, 2019 and received paper wage statements that did not have Defendant's full name and address printed on them." *Id.*

### C. Settlement Agreement

Following discovery and an all-day mediation session, the parties agreed to settle the entire action on the terms detailed below. Dkt. No. 106 (or "Mot.") at 5-7. Plaintiffs moved for preliminary approval of the Settlement on June 8, 2021, which the Court granted on July 29, 2021. *See* Dkt. Nos. 93, 97. Plaintiffs then filed a motion on September 17, 2021, seeking an order awarding Class Counsel's fees and costs, Class Representative Incentive Awards, General Release Payments, and settlement administration costs. Dkt. No. 103 ("Fees Mot."). Plaintiffs moved for final settlement approval on October 28, 2021. Dkt. No. 106. The key terms of the Settlement Agreement are as follows:

#### i. The Settlement Class and Aggrieved Employee Definitions

"Class Members" are defined as "[a]ll current and former hourly employees who worked for Defendant in California and received one or more paper paychecks during the Class Period." Dkt. No. 93-1, Ex. A ("Settlement Agreement" or "SA") § I.H. Settlement Class Members are "all Class Members who do not submit a valid Request for Exclusion." *Id.* § I.RR. The Class Period is December 18, 2016 through June 6, 2019. *Id.* §§ I.I, II.A. Defendant identified 1,891 Class Members who received 28,343 paper paychecks during the Class Period. Mot. at 8.

For the PAGA claims, the Settlement defines "Aggrieved Employees" to mean "all current and former hourly employees who worked for Defendant in California at any time during the PAGA Period." SA § I.B. The PAGA Period is December 18, 2016 through February 22, 2021. *Id.* § I.BB. There are 2,211 Aggrieved Employees, of which 1,891 are also Class Members. Mot. at 8.

#### ii. Settlement Benefits

The Settlement provides that Defendant will fund a Maximum Settlement Amount ("MSA") in the amount of $2,500,000 to resolve the claims covered by the Settlement. SA §§ I.W, III.A. After subtracting out the amounts allocated to the PAGA Payment, Class Counsel's fees and costs, the General Release Payments, Class Representative Incentive Awards, and the settlement administration costs, the remaining funds, referred to as the Net Settlement Amount, will distributed in full to the Settlement Class Members. *Id.* §§ I.X and III.L.2, *see also* §§ I.F,

I.J., I.R, I.AA, III.C, III.L.3-L.6.  The Net Settlement Amount is estimated to be at least $1,146,500.  Mot. at 9.  Defendant does not have any reversionary interest in the MSA.  *Id.*

### iii. Settlement Payments

The Settlement Agreement provides that Settlement Class Members will receive individual settlement payments without having to submit a claim form.  SA § III.L.2.a.  To calculate each Settlement Class Member's share of the Net Settlement Amount, the Settlement Administrator will first divide the respective Qualified Paper Paychecks for each Settlement Class Member by the total Qualified Paper Paychecks for all Settlement Class Members, resulting in the Payment Ratio for each Settlement Class Member.  *Id.* § III.L.2.a.1.  Each Settlement Class Member's Payment Ratio will then be multiplied by the Net Settlement Amount.  *Id.*

Class Counsel estimates that the maximum average potential value of each certified Class Member's Labor Code § 226(a) claim is $1,490.38.  *See* Mot. at 10.  Through the Settlement, each Settlement Class Member is expected to receive an Individual Settlement Payment of, on average, $606.61.78.  *Id.*  That means that the Settlement provides Settlement Class Members with 40.68% of their potential recovery for the Labor Code § 226(a) claim.  *Id.*

The parties have also agreed to allocate $500,000 of the MSA to settle the PAGA claims.  SA §§ I.AA, III.L.5.  Aggrieved Employees are entitled to 25% of that amount ($125,000), which will be distributed according to a formula set forth in the Settlement Agreement.  Mot. at 10.  On average, each Aggrieved Employee is expected to receive a payment of $56.54.  *Id.* at 9.

### iv. Cy Pres Distribution

The parties have agreed that any unclaimed funds will be divided in half and distributed equally to the parties' two *cy pres* recipients.  Mot. at 11.  The two *cy pres* recipients are Build California, a 501(c)(3) organization that is working to develop a future workforce for the construction industry from often under-represented communities, and The Beavers Charitable Trust, which provides endowments and scholarships for universities feeding the construction industry.  *Id.*  All funds sent to The Beaver Charitable Trust must be directed to a university located in California.  *Id.*  None of the Parties' counsel has any relationship to the selected recipients.  *Id.*  The Parties have also agreed that if any Individual PAGA Payment checks issued

4

to Aggrieved Employees remain uncashed more than 90 days after their issuance, the remaining funds will be paid to the California Labor & Workforce Development Agency ("LWDA"). *Id.* at 12.

        **v.**        **Settlement Class Member Release, PAGA Release, and General Release**

The Settlement Agreement provides for a Limited Release applicable to the Settlement Class Members. SA §§ III.B, I.MM, I.NN. Under the Limited Release, Plaintiffs and Settlement Class Members will release only the claims in the operative Third Amended Complaint under Labor Code § 226 based on the failure to provide compliant wage statements, together with interest, fees, and costs related to that failure. *Id.* §§ III.B, I.MM.

The Settlement Agreement provides a separate PAGA Release under which Plaintiff Parker, individually and as a representative acting as a proxy or agent of the LWDA, releases the Released Parties of and from all claims for civil penalties, attorneys' fees, and litigations costs under PAGA. *Id.* § III.D. No individual Class Members or Aggrieved Employees are providing a PAGA Release. *See* Mot. at 13.

In addition to the certified Labor Code § 226 claim, Plaintiffs Parker and Gurule have individual wage and hour claims that remain part of the action. SA § III.C. In exchange for a payment of $20,000 to each named Plaintiff, the named Plaintiffs will provide a General Release of their claims against the Released Parties, as set forth in § I.C of the Settlement Agreement. *Id.* The General Release Payments are in addition to each Plaintiff's Class Representative Incentive Award, Individual Settlement Payment, and Individual PAGA Payment. *Id.* Plaintiffs have applied for the Court's approval of the General Release Payments with the motion for attorneys' fees and costs. Mot. at 13.

**II.**    **DISCUSSION**

    **A.**    **Final Settlement Approval**

        **i.**    **Class Certification**

Because no facts have changed that would affect the Court's certification of the Wage Statement Class since the Court certified that class on November 20, 2020, this order incorporates by reference its prior analysis as set forth in the class certification order. Class Cert. Order at 11-

19.

### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ."). To assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that Class Members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice

6

must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

Under the Notice Plan preliminarily approved by the Court, Defendant provided the Settlement Administrator with each Class Member's contact information and the number of paper paychecks issued to each Class Member during the Class Period. *See* Dkt. No. 97 at 6. The Settlement Administrator then updated and verified addresses as necessary before sending the Settlement Notice and Claim Form via first-class U.S. mail. *Id.* In the event a Notice Packet was returned, the Settlement Administrator conducted address follow-up and re-mailed the Notice Packet to any updated address. *Id.* at 7.

The Settlement Administrator executed this plan and mailed out the Court-approved Notice to the Class Members. *See* Mot. at 15. Ultimately, only 34 of 1,891 Notices were deemed undeliverable. *Id.* Considering this 98.2% success rate, the Court finds that the Notice Plan previously approved by the Court was well-implemented and complies with Rule 23(c)(2)(B). *See id.* The Court further finds that the parties have sufficiently provided the best practicable notice to the Class Members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

### 1. Strength of Plaintiff's Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365, 2010 WL 1687832, at *9 (N.D. Cal.

7

Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

Plaintiffs explain that they would face significant costs, risks, and delay if the case proceeded to trial. Mot. at 15-17. In particular, Plaintiffs state that they might have difficulty countering Defendant's arguments that no Class Member suffered any damages related to the issuance of wage statements and that Plaintiffs will be unable to prove "knowing and intentional failure" under Labor Code § 226(e). *Id.* And as explained below, the Settlement Agreement ensures a favorable recovery for the class. Accordingly, these factors weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2. Settlement Amount

The Court finds that the amount offered in settlement weighs in favor of approval. The Net Settlement Amount is estimated to be at least $1,146,500 and will be distributed to Settlement Class Members in full. Mot. at 17. Each Individual Settlement Payment is estimated to be $606.61.129, on average. *Id.* And in addition to their Individual Settlement Payment, each Class Member will receive a pro rata share of the Aggrieved Employees' $125,000 portion of the PAGA Payment, which is estimated to be $56.54, on average. *Id.* For context, Class Counsel has calculated the maximum value of the Labor Code § 226(a) class claim as $2,742,300.132. The $2,500,000 Maximum Settlement Amount therefore represents 91% of the maximum damage calculation for the largest claim. The Court finds that this settlement amount falls well "within the range of reasonableness" considering the risks and costs of litigation and therefore favors approval.

### 3. Extent of Discovery Completed and Stage of Proceedings

The Court also finds that Class Counsel had sufficient information to make an informed decision about the merits of the case. As Plaintiffs explain, the parties reached settlement only after extensive formal discovery and substantive motion practice, including Defendant's summary

8

judgment motion and Plaintiffs' class certification motion. Mot. at 18. Moreover, the parties also engaged in extensive good-faith, arms-length negotiations, including a full-day mediation session with the Honorable Jeffrey K. Winikow (Ret.), a mediator with experience mediating wage and hour class actions. *Id.* After more than three years of extensive litigation, the Court is persuaded that Class Counsel entered the settlement discussions with sufficient understanding of the factual and legal issues to allow them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 4. Experience and Views of Counsel

The Court next considers the experience and views of counsel. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quotations omitted). Here, Class Counsel believes this Settlement to be an "excellent result" for the Class Members. *See* Mot. at 19. This opinion is bolstered by the fact that Class Counsel has significant experience in complex employment class litigation, including actions involving paycheck claims. *Id.* The Court recognizes, however, that courts have diverged on the weight to assign counsel's opinions. *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . ."). This factor's impact is modest but favors approval.

### 5. Reaction of Class Members

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Because only one of 1,890 Class Members opted out, and because no Class Member has filed an objection to the Settlement, the Court finds that this factor supports final approval. *See*

9

Mot. at 19.

\*         \*         \*

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement Class Members received adequate notice.[1] Accordingly, Plaintiffs' motion for final approval of the class action settlement is **GRANTED**.

### B.   Attorneys' Fees, Costs and Expenses, and Incentive Award

Class Counsel also asks the Court to approve: (1) an award of attorneys' fees in the amount of $750,000 to Class Counsel; (2) reimbursement of $39,383.59 in litigation expenses advanced by Class Counsel; (3) payment of the Class Representative Incentive Awards in the amount of $5,000 to Plaintiff Parker and $2,500 to Plaintiff Gurule; (4) General Release Payments to Plaintiff Parker and Plaintiff Gurule in the amount of $20,000 each for the release of their individual claims that would otherwise need to be tried; and (5) payment of settlement administration costs to RG2 Claims Administration LLC in the amount of $16,000.  *See* Fees Mot. at 2; Dkt. No. 106-3.

---

[1] Plaintiffs also seek the Court's approval of the PAGA portion of the Settlement, including the $500,000 PAGA Payment, the distribution plan for the PAGA Payment and Notice of PAGA Settlement, and the PAGA Release.  *See* Mot. at 23.  The parties proceed as if California state law governs the Court's review of the PAGA Settlement, but do not address the choice of law issue. "The Ninth Circuit has yet to decide whether plaintiffs bringing a PAGA claim in federal court must satisfy the requirements of Rule 23, and the district courts in California are split on the issue." *Ortiz v. CVS Caremark Corp.*, No. C -12-05859 EDL, 2014 U.S. Dist. LEXIS 36833, at \*4 (N.D. Cal. Mar. 18, 2014); *see also Evans v. Wal-Mart Stores, Inc.*, No. CV 17-07641-AB (KKX), 2020 WL 6253695, at \*12 (C.D. Cal. Sept. 14, 2020) ("While the issue of PAGA's applicability to state class-certification requirements is settled, whether Rule 23 class certification is required for maintenance of a PAGA claim in federal court is less clear."); *Canela v. Costco Wholesale Corp.*, 965 F.3d 694, 700 (9th Cir. 2020) (explaining why PAGA causes of action "[a]re nothing like Rule 23 class actions") ( *opinion amended and superseded on denial of reh'g*, 971 F.3d 845 (9th Cir. 2020).  Recognizing this uncertainty, the Court notes that Plaintiffs do not intend to administer the PAGA portion of the Settlement claim materially differently from the Labor Code § 226 portion of the Settlement and therefore finds that the PAGA Settlement is fair, reasonable, and adequate under either standard, for the reasons explained above.  *See* Mot. at 22-23; *see also Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122 (9th Cir. 2014) (explaining how Rule 23 contains more stringent notice, representation, and class certification standards than PAGA actions).

i. **Attorneys' Fees**

a. **Legal Standard**

Class counsel is entitled to an award of reasonable attorneys' fees and reimbursement of litigation expenses from the common fund they created for the benefit of a class. *See* Fed. R. Civ. P. 23(h); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003). The purpose of the "common fund" doctrine is to avoid unjust enrichment by requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). The district court has discretion over the amount of attorney fees to award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

In a common fund case, the Court may choose either (1) the lodestar method or (2) the percentage-of-the-fund to calculate reasonable attorneys' fees. *Id.* at 1047. Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards. *See, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citations omitted). "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin.*, Inc., 523 F.3d 973, 979 (9th Cir. 2008) (quotations omitted). Generally, "the relevant community is the forum in which the district court sits." *Id.* (citations omitted). Typically, "affidavits of the

11

plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "In addition to affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases." *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

Although the choice between lodestar and percentage calculation depends on the circumstances, either method may have its place in determining reasonable compensation for creating a common fund. *Six Mexican Workers*, 904 F.2d at 1311.

### b. Analysis

Class Counsel asks the Court to approve an award of attorneys' fees in the amount of $750,000, which is about 30% of the amount Defendant will pay to the settlement fund. *See* Fees Mot. at 12. Counsel acknowledges that its requested attorneys' fees are greater than the 25% benchmark but contends that the higher percentage is warranted given the contingency nature of this case, the uncertainty of the outcome, the quality of the counsel, and Class Counsel's preclusion from other employment. *See id.* at 14.

The Court finds that the higher percentage is reasonable and justified for the following reasons. First, and most significantly, class counsel obtained significant results for the class members. As discussed in Section II.A.ii, the Settlement Agreement provides an available Net Settlement Amount of at least $1,146,500 to be distributed in full to Settlement Class Members. *See* Mot. at 21. Second, no Class Member objected to the Settlement and only one of 1,890 Class Members opted out, which suggests strong support for the settlement's outcome. *See* Mot. at 19. And third, class counsel assumed substantial risk in litigating this action on a contingency fee basis and incurring costs without the guarantee of payment for its efforts. *See* Fees Mot. at 15.

Using the lodestar method to cross-check, the Court notes that Class Counsel's various hourly rates multiplied by the over 1500 attorney hours billed to date results in a total lodestar to date of approximately $1,133,580 and a total expected lodestar of approximately $1,140,580. *See* Dkt. 103-1 at 16-18; Dkt. No. 106-1 at 11-12. The Court finds that the billing rates used by Class

12

Counsel to calculate the lodestar are reasonable and in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable "given the complexities of this case and the extraordinary result achieved for the Class."). Thus, Class Counsel's fee request of $750,000.00 amounts to a negative multiplier, or approximately 66% of the anticipated $1,140,580 lodestar. This is a reasonable request. In recognition of the favorable settlement, the substantial risks of litigation, and the financial burden assumed, the Court **GRANTS** attorneys' fees of $750,000.00.

### ii. Costs and Expenses

An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted). Class Counsel is accordingly entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Id.*

Having reviewed the submissions of Class Counsel, the Court finds that their requests for unreimbursed expenses are reasonable. Class Counsel requests reimbursement of $39,383.59 in costs and expenses incurred in connection with the litigation. *See* Fees Mot. at 20. As demonstrated by detailed billing records submitted to the Court, the incurred costs include filing fees, legal research fees, mediation fees, mailing charges, federal express costs, hotels, travel costs, meals, and deposition transcripts. *See id.* These reflect the type of expenses routinely charged to paying clients. *See, e.g.*, *Torres v. Pick-A-Part Auto Wrecking*, No. 116-CV-01915, 2018 WL 3570238, at *9 (E.D. Cal. July 23, 2018) (finding that ordinary out-of-pocket expenses include "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees"); *In re Immune*

13

*Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (same).  And the amount requested is also within range of approval.  *See, e.g.*, *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1024 (E.D. Cal. 2019) (reimbursing $823,904.04 for costs including filing fees, copying, postage, document storage, depositions, travel, experts, transcripts, computer research, the cost of the mediator, and common-fund contributions).  The Court is satisfied that these costs were reasonably incurred and **GRANTS** the motion for costs in the amount of $39,383.59.

          iii.      **Class Representative Service Award**

Class Counsel seeks an incentive award of $5,000 for Plaintiff Parker, who was the original named plaintiff, and $2,500 for Plaintiff Gurule.  *See* Fees Mot. at 20-21.

Named plaintiffs are eligible for "reasonable incentive payments."  *Staton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases.").  These payments are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 958–59.  Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives[.]"  *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotations omitted).  This is particularly true where "the proposed service fees greatly exceed the payments to absent class members."  *Id.*

The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation[.]"  *Id.* at 977.  In the Ninth Circuit, courts have found that $5,000 is a "presumptively reasonable" service award.  *See Noroma v. Home Point Fin. Corp.*, No. 17-CV-07205-HSG, 2019 WL 1589980, at *8 (N.D. Cal. Apr. 12, 2019); *see also Harris v. Vector Marketing Corp.*, 2012 WL 381202, at *7 (N.D. Cal. 2012) ("Several courts in this District have indicated that incentive payments of $ 25,000 are quite high and/or that, as a general matter, $ 5,000 is a

14

reasonable amount.").

The Court finds that the requested service awards are reasonable to compensate Plaintiffs for their efforts for the following reasons. First, the Court finds that both named plaintiffs have taken actions to protect the interests of the class. Class Counsel maintain that both named class plaintiffs assisted in investigating and substantiating the claims alleged, preparing the complaints, communicating with counsel, responding to discovery requests, and preparing for mediation and settlement. Fees Mot. at 21. Second, as previously explained, their efforts led to favorable results for the entire class. Third, the Court recognizes that both named plaintiffs also accepted some risk by bringing this action. Both explain that they are concerned about the possible repercussions to their future job opportunities because they brought wage and hour lawsuits against their employers. *See* Dkt. No. 103-3; Dkt. No. 103-4. Finally, both Plaintiffs devoted their time to this case. Plaintiff Parker brought this lawsuit in early 2018 after hearing complaints from several of her co-workers and she has been actively involved since. *See* Dkt. No. 103-3. Plaintiff Gurule necessarily devoted less time to this action, since he only entered the case on November 23, 2020, when Plaintiffs filed a third amended complaint. *See* Dkt. No. 82. However, he explains in his declaration that he spent significant time actively participating in the litigation, particularly relating to his deposition. *See* Dkt. No. 103-4. Moreover, his requested service award is appropriately significantly less than Plaintiff Parker's.

Plaintiff Parker and Plaintiff Gurule are entitled to compensation for their work on behalf of the class and for the financial or reputational risk they undertook to litigate this case. The Court bears in mind that the proposed service fees of $5000 and $2500, respectively, are several times greater than the payments to absent class members, since each Class Member's individual settlement payment is estimated to be $606.61.12, on average. *See* Mot. at 17. But after reviewing their declarations, and considering the circumstances of this lengthy case, the Court finds that the requested service awards are reasonable to compensate Plaintiffs for their efforts.

     **iv.**    **General Release Payments**

Named Plaintiffs Parker and Gurule have individual claims against Defendant that would not be resolved by the Limited Release applicable to all Settlement Class Members. *See* Fees

15

Mot. at 22. Accordingly, the Settlement Agreement also provides that Plaintiffs Parker and Gurule will release all their individual claims in exchange for a payment of $20,000 each. *See* SA §§ III.L.3 and II.C. This "General Release" does not apply to or affect the Settlement Class Members. *See* Mot. at 22. The Court finds that the General Release Payments invite no risk of preferential treatment because the Settlement Class Members will not be subject to or affected by the General Release. Moreover, Named Plaintiffs provide calculations reasonably justifying these amounts based on the estimated value of their individual claims. *See* Dkt. No. 103-3; Dkt. No. 103-4. The General Release Payment is therefore approved.

### v. Settlement Administrator Costs

As part of the preliminary approval process, the Court approved the hiring of RG2 Claims as the Settlement Administrator. *See* Dkt. No. 97 at 6, 10. In so doing, the Court also tentatively approved the payment to RG2 Claims of up to $16,000 to perform all the duties required to administer the settlement. *Id.* The Settlement Administrator has submitted a declaration and invoice stating that the total cost for services in connection with the administration of the Settlement, including fees incurred and anticipated future costs, are $16,000. *See* Dkt. No. 106-3. For the reasons explained in the Court's Preliminary Settlement Approval Order, *see* Dkt. No. 97, the Court finds this request reasonable.

## III. CONCLUSION

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement and **GRANTS** the motion for attorneys' fees, costs, and incentive awards. The Court approves the settlement amount of $2,500,000. The Court also approves (1) Class Counsel's request for an award of attorneys' fees in the amount of $750,000; (2) Class Counsel's request for payment of current actual costs incurred in the amount of $39,383.59; (3) the Class Representative Incentive Awards in the amount of $5,000 for Plaintiff Parker and $2,500 for Plaintiff Gurule; (4) the General Release Payments in the amount of $20,000 each to Plaintiff Parker and Plaintiff Gurule; and (5) payment to RG2 Claims for the costs it incurred administering this settlement in the amount of $16,000.

The parties and settlement administrator are directed to implement this Final Order and the

16

settlement agreement in accordance with the terms of the settlement agreement. The parties are further directed to file a short stipulated final judgment of two pages or less within 14 days from the date of this order. The judgment need not, and should not, repeat the analysis in this Order.

**IT IS SO ORDERED.**

Dated: December 9, 2021

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

17